UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| DR. G. DAVID MOSS, PH.D., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:13-cv-1239 |
| | ) |
| THE UNIVERSITY OF NOTRE DAME DU LAC, AND ERIN HOFFMAN-HARDING, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY, | ) Hon. James T. Moody ) ) ) |
| | ) |
|     Defendant. | ) |

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS COUNT I (IN PART) AND COUNTS II, III, IV, AND V OF PLAINTIFF'S COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the University of Notre Dame and Erin Hoffmann Harding (collectively, "Defendants" or "Notre Dame") ask this Court to dismiss, in part, Dr. G. David Moss' ("Plaintiff") Complaint.[1]  In support of their Motion to Dismiss, and in reply to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, Defendants state as follows:

**I.  Plaintiff's Title VII Retaliation Claim (Count II) Must Be Dismissed Because Plaintiff Has Not Exhausted His Administrative Remedies.**

Plaintiff's attempt to characterize the allegations in the Equal Employment Opportunity Commission (hereinafter "EEOC") charge as "intricately linked in time, people, and substance" to the new allegations in the Complaint is misplaced.  The allegations in Count II of Plaintiff's Complaint are outside the ambit of the predicate EEOC charge and could not have put the EEOC or Notre Dame on notice regarding the conduct about which Plaintiff was concerned.  *See*

---

[1] In Section I of Plaintiff's response, he admits that his Title VII Counts I and II against Defendant Erin Hoffman-Harding should be dismissed.

*Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985) (stating that the purpose of the limitation is to give the employer a warning of the conduct about which the charging party is concerned, as well as to allow the employer and the EEOC an opportunity to engage in conciliation efforts without resorting to the courts).

> Plaintiff's EEOC charge alleged as follows:
>
> I am a black employee hired by the University of Notre Dame in the Fall of 1998 as a Special Assistant to the Vice President of Student Affairs. I held the position of Assistant Vice President of Student Affairs from 1999 until 2010. From 2010 until 2012, I became Assistant Vice President for Student Affairs for Student Services. I applied for the Associate Vice President for Student Affairs in June 2012. My supervisor is Erin Hoffman-Harding, Student Affairs Vice President, White. I was denied the position, which was a lateral promotion. Dr. William Stockman, White, was hired for the position. I believe that I was more qualified for the position than Dr. William Stockman, White.

(*See* Mot. to Dismiss, Ex. A.) Plaintiff's EEOC charge claimed that Notre Dame did not promote him to a new position because of his race. Plaintiff did not identify a "protected activity," a requirement of a retaliation claim. Nor did Plaintiff attempt to assert that he suffered an adverse action as a result of a protected activity. Retaliation is a separate and distinct claim from discrimination and Plaintiff made no attempt to articulate any type of retaliation claim in his EEOC charge.

Count II alleges, for the first time, that Notre Dame demoted and retaliated against Plaintiff because he worked with a student group (the Call to Action initiative) that sought to respond to an insidious incident wherein unidentified individuals placed "chicken-parts" into the mailboxes of two African-American student organizations. Plaintiff's EEOC charge and retaliation claim contain completely different and unrelated claims. Accordingly, the allegations in Count II are not within the ambit of the predicate EEOC charge. *See Auston v. Schubnell*, 116 F.3d 251, 254 (7th Cir. 1997) (dismissing plaintiff's retaliation claim where plaintiff did not

check the retaliation box on the Charge form, "nor did his account of the facts include any reference at all to retaliatory conduct").

Plaintiff argues that: (i) his "EEOC charge of race discrimination was sufficient to ensure that Defendants had formal notice of a problem"; (ii) Plaintiff is not a lawyer; and (iii) the general publicity surrounding the "chicken-part" incident should have placed Notre Dame and the EEOC on notice. (Resp. at 4-6.) Plaintiff has not provided any legal authority for his theory that a plaintiff can fulfill the EEOC exhaustion requirement if he puts the defendant on notice that there is some general "problem." Likewise, Plaintiff has not cited, nor could he, any support for his theory that Title VII lawsuits may proceed even if the underlying EEOC charge does not describe the same conduct, so long as the person who completed the underlying EEOC charge form was not a lawyer. Moreover, the fact that an issue with the student body at Notre Dame made national news does not excuse Plaintiff's failure to comply with the requirement that he put both the EEOC and Notre Dame on notice. Such a holding would require the EEOC to monitor every national news story to know what claims it may have to investigate.

As noted in *Babrocky*, "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge. . . ." *Babrocky*, 773 F.2d at 863 (7th Cir. 1985). The allegations in Count II are outside the ambit of the predicate EEOC charge and therefore, must be dismissed.

**II.    Plaintiff's Title VII Retaliation Claim (Count II) Must Be Dismissed Because Plaintiff Does Not Allege that He Engaged in Statutorily Protected Activity.**

42 U.S.C. § 2000e-3 provides:

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees. . .because he has opposed any practice made an unlawful *employment practice* by

>this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter.

(emphasis added). A "statutorily protected" activity includes only those acts that an employee took to oppose unlawful Title VII conduct. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013); *Berg v. LaCrosse Cooler*, 612 F.2d 1041, 1043 (7th Cir. 1980) ("Unless the practice opposed is in truth a 'practice made an unlawful employment practice' by [Title] VII . . . the employee enjoys no protection . . . ."). Thus, an employer can be held liable only for restricting their employees from opposing the employer's unlawful employment practices.

In his Complaint, Plaintiff does not allege that he made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under 42 U.S.C. § 2000e. Nor does he allege that he opposed Notre Dame's unlawful *employment practices*. Rather, Plaintiff alleges that Notre Dame retaliated against him because he worked with, and supported, the Call to Action initiative. (Compl. ¶ 25.) Supporting a student initiative does not qualify as "statutorily protected" activity under Title VII. *See Bonn v. City of Omaha*, 623 F.3d 587 (8th Cir. 2010) (finding that the employee did not engage in statutorily protected activity when she published a report alleging that her employer engaged in discriminatory policing tactics). In his response, Plaintiff concedes that his speech dealt with "racial discrimination towards students rather than Notre Dame employees," but argues that "Title VII would be disserved by parsing such a distinction." (Resp. at 6-7.) It is not surprising that Plaintiff provided no legal authority for his position as 42 U.S.C. § 2000e-3 creates liability only against employers who restrict their employees from opposing the unlawful employment practices of their employees.[2] Thus, what Plaintiff describes as an unnecessary distinction is precisely the distinction that Title VII makes.

---

[2] Title VII defines "employee" in pertinent part as "an individual employed by an employer." 42 U.S.C. § 2000e(f).

- 4 -

Because Plaintiff alleges he was opposing racially discriminatory practices directed at students, his claim must be dismissed.

Finally, Plaintiff's argument that Notre Dame can be held liable because the "chicken-part" incident created a racially hostile environment also lacks merit. If Plaintiff's theory was accepted, any institution could be liable pursuant to Title VII whenever an inappropriate incident occurred on that institution's premises, regardless of whether an employee of that institution played any role in the incident. The law does not countenance such an absurd result.

**III.     Plaintiff's Section 1983 Claims (Counts III, IV, and V) Must Be Dismissed Because Section 1983 Does Not Apply to Private Entities Unless They Act Under the Color of State Law.**

**A.     Notre Dame's Motion to Dismiss Is Not Premature.**

Notre Dame argues that Counts III, IV, and V of Plaintiff's Complaint must be dismissed because Notre Dame is a private institution and there are no facts upon which this Court could conclude that Notre Dame has acted under the color of state law. In response, Plaintiff argues that Notre Dame's arguments are premature and suggests that this Court should allow Plaintiff to conduct discovery with respect to whether Notre Dame is a private institution or has acted under the color of state law.

Notre Dame's arguments are not premature. Courts routinely dismiss cases where, as here, the complaint does not allege facts sufficient to establish that the defendant is a public institution or has acted under the color of state law. *See London v. RBS Citizens, N.A.*, 600 F.3d 742, 748 (7th Cir. 2010) (dismissing the plaintiff's Section 1983 claim for failure to indicate how the defendant acted under color of law); *Tucovic v. Hogan*, 2011 WL 3421418, at *3 (N.D. Ind. Aug. 4, 2011) (same); *Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971) (upholding dismissal because facts averred did not "evidence such State involvement as to transform the

actions of the Fisk University officials into 'State action.'"). Furthermore, courts have expressly ruled that *Marsh v. Alabama*, 326 U.S. 501 (1946), does not apply to private universities. *See Grossner v. Trustees of Columbia University in City of N.Y.*, 287 F. Supp. 535, 549 (S.D.N.Y. 1968) ("No case anywhere, and no acceptable extension of any pertinent principle, indicates that a University like Columbia is engaged in 'state action'"); *Browns v. Mitchell*, 409 F.2d 593, 596 (10th Cir. 1969) (distinguishing *Marsh* and rejecting a finding of state action by a private university); *Blackburn*, 443 at 124 (rejecting the public function concept in upholding dismissal of a plaintiff's Section 1983 allegations against a private university).

Plaintiff's claim that discovery on the *Marsh* factors is needed is a red herring. None of the cases cited in Plaintiff's response precludes dismissal of Plaintiff's Section 1983 claims because those cases involved situations where some form of government entity worked with, or was involved with, the defendant (the alleged state actor). *See e.g. Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922 (1982) (examining whether the defendant's actions, along with those of the court and sheriff's office, in an action involving the prejudgment possession of property conferred state actor status on the defendant); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961) (examining whether a restaurant had state actor status when the restaurant was located in a government owned building and enjoyed benefits that the government enjoyed since it was located in the government building); *Dunham v. Frank's Nursery & Crafts, Inc.*, 919 F.2d 1281 (7th Cir. 1990) (examining the court's role in connection with the defendant's preemptory challenges for jury selection to see if the court's actions after jurors were stricken would have conferred state actor status on defendant). These cases simply do not apply to this case. In light of the case law cited by Notre Dame, the allegations in the Complaint are insufficient and should be dismissed. Notre Dame's motion is not premature.

### B.     Plaintiff Has Failed to Allege Facts Sufficient to Establish that Notre Dame Has Acted Under the Color of State Law.

Plaintiff's main argument, that *Marsh v. Alabama*, 326 U.S. 501 (1946), should apply in this case and that under *Marsh*, Notre Dame is a state actor, is wrong. Courts have held that *Marsh* does not apply to private universities. *See Grossner v. Trustees of Columbia University in City of N.Y.*, 287 F. Supp. 535, 549 (S.D.N.Y. 1968) ("No case anywhere, and no acceptable extension of any pertinent principle, indicates that a University like Columbia is engaged in 'state action'"); *Browns v. Mitchell*, 409 F.2d 593, 596 (10th Cir. 1969) (distinguishing *Marsh* and rejecting a finding of state action by a private university); *Blackburn*, 443 at 124 (rejecting the public function concept in upholding dismissal of a plaintiff's Section 1983 allegations against a private university). Furthermore, the issues in *Marsh* are unrelated to those in this case. In *Marsh*, the court addressed the limited question of whether a private owner could abridge the First Amendment rights of the plaintiff when those rights were technically exercised on private property right outside of a post office. *Marsh* did not address whether that same private entity can be considered a state actor for the purpose of a Section 1983 claim.

None of the cases cited by Plaintiff holds that a private university is a state actor. Nor do any of these cases support Plaintiff's extreme position that not only is Notre Dame a state actor, but it is a state actor *for all purposes*. (Resp. at 9). Thus, the cases can all be easily distinguished. For example, in *Velez v. Amenta*, 370 F. Supp. 1250 (D. Conn. 1974), the court did not address whether a private university was a state actor, but addressed a narrow issue related to access to and use of privately-owned premises by visitors of migrant and seasonal farm workers living at a privately-owned camp while the workers were organizing a union. Indeed, the court did not even determine whether the camp was a "company town." Plaintiff simply has provided no legal authority for his position that the company town analysis extends to a private

university or that a private university is akin to a company town when the focus of a religious based private university is educating its students consistent with his religious beliefs and objectives.

Despite no case law supporting his position, Plaintiff argues that he has pled enough to establish that Notre Dame is a state actor. As explained in its opening brief, Notre Dame is not a state actor merely because (accepting Plaintiff's allegations as true): (i) businesses open to the public, such as Burger King and FedEx Kinkos,[3] sit on Notre Dame's campus; (ii) public roads run through Notre Dame's campus; (iii) a federal post office and two federal reserve depository libraries allegedly sit on Notre Dame's campus; and (iv) "85,000" football fans wander around Notre Dame's campus on game days. Nor is Notre Dame a state actor because people visit the Sacred Heart Basilica and has alleged "enforcement mechanisms" available for it students and faculty. (Resp. at 14). The University of Notre Dame is a Catholic academic community of higher learning that traces its origins to the Congregation of Holy Cross. Notre Dame's mission is to transmit knowledge through teaching and mentoring, to foster the discovery of knowledge through research and scholarship and, above all, to support the holistic formation of its students – intellects, hearts and souls. While the educational, living, and worship services provided on Notre Dame's campus support the University's mission, these services do not render the University a state actor.

Finally, Plaintiff's argument that this Court should allow his "Notre Dame is a state actor for all purposes" theory to proceed because it will "open the door to personal liability" for Ms. Hoffmann Harding is also baseless. (Resp. at 10.) Plaintiff does not cite any support for his

---

[3] Burger King and FedEx Kinkos are also private entities.

theory. Plaintiff's argument merely reflects his desire to keep Ms. Hoffmann Harding named as an individual defendant in a case despite the absence of legal authority to do so.

**IV.     Plaintiff Has Not Properly Pled Section 1981 Claims.**

Plaintiff's Complaint mentions 42 U.S.C. §1981 twice (once in the opening paragraph and again in paragraph two). Plaintiff does not assert any counts pursuant to Section 1981, nor does he claim discrimination under Section 1981. (Compl. at ¶ 30, 36, 42, 48). Accordingly, Plaintiff has not properly pled a claim under Section 1981.

Plaintiff now references Section 1981 in the header to his arguments addressing Notre Dame's challenges to the Section 1983 claims. (Resp. at 8, 10, 15). He also contends that Count III (titled "Section 1983 – First Amendment (Speech)"); Count IV (titled "Section 1983 First Amendment (Association)"); and Count V (titled "Section 1983 – First Amendment (Retaliation)") should be construed as *prima facie* Section 1981 claims. (*Id.* at 16). Thus, while Plaintiff's alleged Section 1981 claims were not pled in his Complaint, he now attempts to bootstrap his alleged Section 1981 claims into Counts III, IV, and V.

Notre Dame maintains that Plaintiff has not properly pled his Section 1981 claims. To the extent this Court allows Plaintiff to claim that his Section 1981 claims were actually included within Counts III, IV, and V, as Plaintiff now alleges, they still fail to state a claim upon which relief can be granted. Notre Dame does not dispute that Section 1983 constitutes the exclusive remedy against state actors for Section 1981 violations. *See Greater Indianapolis Chapter of the NAACP v. Ballard*, 741 F. Supp. 2d 925, 941 (S.D. Ind. 2010). Based on Plaintiff's erroneous theory that Notre Dame is a state actor, this is likely why Plaintiff now argues that his Section 1981 claims fall within the scope of his Section 1983 claims. However, as demonstrated above,

Notre Dame is not a state actor. Plaintiff's belated attempt to assert a state actor Section 1981 claim through his Section 1983 claims must fail.

Furthermore, although Section 1981 allows suits against private entities, Counts III, IV, and V all involve claims for alleged First Amendment violations. The First Amendment, which limits government action, does not "restrict a private employer's ability to terminate an employee for exercising their right of free speech or right to petition the government." *Ryan v. Underwriters Labs., Inc.*, 2007 U.S. Dist. LEXIS 58452 at * 29 (S.D. Ind. Aug. 8, 2007). Thus, as a private entity, Notre Dame cannot be liable for First Amendment claims. Because Plaintiff's sole contention, although not pled in his Complaint, is that he has properly pled Section 1981 claims in Counts III, IV, and V, and because those claims involve First Amendment claims, those counts cannot form a basis for Section 1981 liability. Plaintiff's erroneous citation to *Lalvani v. Cook Cnty., Illinois*, 269 F.3d 785 (7th Cir. 2001) does not dictate otherwise given that Plaintiff's response brief indicates that he believes his Section 1981 claims are those that were pled in Counts III, IV, and V.

Plaintiff's Section 1981 claims should be dismissed because he did not properly plead them. Alternatively, since Plaintiff now claims that his Section 1981 claims fall under Counts III, IV, and V, which all involve Section 1983 First Amendment claims, those claims should also be dismissed because Notre Dame is not a state actor.

## CONCLUSION

WHEREFORE, Defendants respectfully ask this Court to grant their Motion to Dismiss and order as follows:

(i) Plaintiff's Title VII race discrimination and retaliation claims against Erin Hoffmann Harding are dismissed. (Counts I and II, in part);

(ii) Plaintiff's Title VII retaliation claims against the University of Notre Dame and

    Erin Hoffmann Harding are dismissed.  (Count II);

 (iii) Plaintiff's Section 1983 claims against the University of Notre Dame and Erin Hoffmann Harding are dismissed.  (Counts III, IV, and V);

 (iv) Plaintiff's unpled Section 1981 claims are dismissed, or in the alternative, Plaintiff's Section 1981 claims are dismissed (Counts III, IV, and V); and

 (v) Because all claims against Erin Hoffmann Harding have been dismissed, the case caption shall be modified to exclude the name of Erin Hoffmann Harding from all future pleadings.

Dated:  February 10, 2014    Respectfully submitted,

             BARNES & THORNBURG LLP

             /s/ Alice J. Springer
             Alice J. Springer
             600 1st Source Bank Center
             100 North Michigan
             South Bend, Indiana  46601
             Phone:  (574) 233-1171
             Facsimile:  (574) 237-1125

             Lindsey D. G. Dates, *pro hac vice*
             One North Wacker Drive
             Suite 4400
             Chicago, Illinois  60606-2833
             Phone:  (312) 357-1313
             Facsimile:  (312) 759-5646

             Kathleen K. Brickley
             Associate General Counsel
             UNIVERSITY OF NOTRE DAME
             203 Main Building
             Notre Dame, Indiana  46556
             Phone:  (574) 631-6411
             Facsimile:  (574) 631-8233

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 10, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

        Thomas M. Dixon
        Dixon, Wright & Associates, P.C.
        55255 Birchwood Court
        Osceola, Indiana  46561


        /s/ Alice J. Springer
        Alice J. Springer