UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DR. G. DAVID MOSS, PH.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:13 CV 1239 |
| | ) |
| THE UNIVERSITY OF NOTRE DAME | ) |
| DU LAC, and ERIN HOFFMAN-HARDING, | ) |
| INDIVIDUALLY AND IN HER | ) |
| OFFICIAL CAPACITY, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

In this action plaintiff Dr. G. David Moss, Ph.D. ("Moss") alleges that The University of Notre Dame Du Lac, acting through its employee, Erin Hoffman Harding[1] denied him a promotion and demoted him on the basis of his race and as unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and in addition violating the First and Fourteenth Amendments enforceable via 42 U.S.C. § 1983. UND has moved to dismiss the bulk of Moss's complaint (all except Count I) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted.

The court applies this standard to the motion: With the complaint's well-pleaded factual allegations accepted as true, dismissal for failure to state a claim pursuant to

---

[1] For convenience, the defendants will be referred to collectively as "UND." When it is necessary to refer to one of them individually, that will be made clear by the text, typically by using the terms "Notre Dame" and the surname Hoffman-Harding.

Rule 12(b)(6) is appropriate when those facts are not enough to make a right to relief plausible, meaning more than speculative. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Vinson v. Vermilion Cty., Illinois*, 776 F.3d 924, 928 (7th Cir. 2015). To avoid dismissal, the complaint's factual content must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. The court notes, however, that the basis of UND's attack on Moss's complaint is not so much based on the facts he alleges as it is on the legal theories he invokes.

Describing the complaint's allegations most briefly, Moss, an African-American male whom Notre Dame employed for over a decade as an Assistant Vice President of Student Affairs, was denied a promotion, demoted, and threatened with termination after he publicly spoke out against incidents of racial harassment on campus directed against an African-American student organization named "Call to Action." The incidents and Moss's reaction to them received significant publicity in the community, causing Notre Dame embarrassment. Moss also alleges that Notre Dame's campus is open to the public and has stores, restaurants, a church which is Indiana's second-largest tourist attraction, a post office, a police force, a fire department, a health center public roads, and more, which features and services make Notre Dame equivalent to a "company town" as in *Marsh v. Alabama*, 326 U.S. 501 (1946).

Moss's complaint contains five counts. Count I alleges that UND's adverse employment actions violated Title VII on the basis of Moss's race. Count II alleges that

2

UND's adverse employment actions constituted unlawful retaliation in violation of Title VII. Count III alleges that UND's actions violated Moss's First Amendment right to free speech in violation of 42 U.S.C. § 1983. Count IV alleges that UND's actions violated Moss's First Amendment right to free association in violation of 42 U.S.C. § 1983. Last, Count V alleges that UND's actions deterred Moss's First Amendment rights of free speech and free association in violation of 42 U.S.C. § 1983.[2] UND has moved to dismiss the retaliation claim in Count II as being beyond the scope of the charge filed with the Equal Employment Opportunity Commission ("EEOC"), and because Moss did not allege that he engaged in statutorily-protected activity. UND has moved to dismiss Moss's § 1983 claims in Counts II, IV and V because it is a private actor not acting under color of state law, and because Moss's speech was work-related and so not a constitutional activity protected by § 1983.[3]

*Count II – Retaliation*

When Moss filed his charge with the EEOC, he did not check the box for "retaliation," only that for discrimination on the basis of race. (DE # 12-1 at 1.) The so-called "scope-of-the-charge" rule prohibits plaintiffs from bringing claims in federal

---

[2] In addition, the introductory paragraph of Moss's complaint and ¶ 2, alone, mention 42 U.S.C. § 1981. The inclusion of this statutory reference is addressed briefly near the conclusion of this opinion and order.

[3] UND also moves to dismiss Counts I and II of the complaint to the extent, if any, that they apply to Hoffman-Harding individually. Moss agrees that dismissal of any individual claims against her in those counts is appropriate (DE # 14 at 1), so the court need not discuss the matter further.

court that were not included in their EEOC charge, because doing so frustrates the EEOC's role to investigate and settle claims, and deprives the charged party of notice. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47 (1974). However, claims which are "like or reasonably related to" the allegations in the charge and would be expected to grow out of the EEOC's investigation of the allegations in the charge are not beyond the scope, and may be litigated. *Vela v. Village of Sauk Village,* 218 F.3d 661, 664 (7th Cir. 2000); *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

In response to UND's motion, Moss argues that, although he did not check the box for retaliation or mention his demotion, he did not understand the significance of failing to do so because he is not a lawyer. Instead, in the "particulars" section of his charge he gave a "brief but detailed . . . description of his tenure with Notre Dame, the titles he held over the course of his fourteen year tenure with the University, the name and position of his then supervisor, Defendant Erin Hoffman-Harding, and indicated that he felt he had been passed over for a promotion in favor of a less qualified white candidate on the basis of racial discrimination from the period of June 2012 to August 2012." (DE # 14 at 4.) He then argues that given the publicity surrounding the harassment incidents at UND and of his reaction to them, and the fact that all of the events were closely related in "time, people and substance," it was reasonable for him to assume that the EEOC's investigation of the events would encompass everything and that his charge was sufficient to give UND formal notice of a problem that included retaliation. (*Id*. at 5.)

Moss compares his charge to that in *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364 (7th Cir. 1993), where plaintiff Kristufek alleged age discrimination but not retaliation in his EEOC charge, and the Court of Appeals affirmed the district court's decision not to dismiss the retaliation charge as beyond the scope. Kristufek had been told by his supervisor, Mosteller, to fire an older employee, McPherson, but refused to do so, telling Mosteller that doing so would be age discrimination. *Kristufek*, 985 F.2d at 367. Kristufek himself was then fired a short time later. Both Kristufek and McPherson filed charges and brought suit. The Court of Appeals explained:

> After Kristufek argued McPherson's case before Mosteller on the basis of age discrimination, he suffered retaliation. Kristufek testified that to mention age discrimination to Mosteller only infuriated him. These charges, his and hers, were all related in time and substance and both focused on Mosteller's conduct as president of Hussmann. Mosteller, the company president, McPherson, his executive secretary, and Kristufek, the personnel officer of Hussmann, were the people directly involved in the charges, all part of the company's inner circle. That should have been enough even in a perfunctory investigation of the charges to have revealed the retaliation aspect as part of the whole. Kristufek's retaliation charge grew out of McPherson's age problem.

*Id.* at 368. Observing that cases dealing with the scope-of-the-charge rule are narrowly based on their facts and "not easy to reconcile," the court concluded:

> [I]n the present case, the factual relationship of the age and discrimination charges of the parties is so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert the liberal remedial purposes of the Act. [Employer] Hussmann had formal notice of a problem though not complete notice, but that should have been enough.

*Id.* at 368-69. Notably, however, the Court of Appeals said that its decision was "a close call . . . based on these particular facts Kristufek's EEOC filing limited to age discrimination without mention of his retaliatory allegation was enough." *Id*. at 368.

In the present case, Moss's characterization of his EEOC charge's particulars as "brief but detailed" implying that he did enough to give notice of retaliation stretches things too far. The paragraph in the charge that Moss refers to states:

> I am a black employee hired by the University of Notre Dame in the Fall of 1998 as a Special Assistant to the Vice President of Student Affairs. I held the position of Assistant Vice President of Student Affairs from 1999 until 2010. From 2010 until 2012, I became Assistant Vice President for Student Affairs for Student Services. I applied for the Associate Vice President for Student Affairs in June 2012. My supervisor is Erin Hoffman-Harding, Student Affairs Vice President, White. I was denied the position, which was a lateral promotion. Dr. William Stockman, White, was hired for the position. I believe that I was more qualified for the position than Dr. William Stockman, White.

As Moss admits, nothing in this paragraph mentions his demotion. More critically, however, nothing in this paragraph hints at UND having denied him the promotion, demoted him, and threatened him with termination, for speaking out against incidents of racial harassment on campus and thereby causing unflattering publicity—events which would seem to be of obvious significance whether or not one is a lawyer. Instead, Moss's EEOC charge reads like a straightforward charge of racial discrimination: He was passed over for a promotion because preference was given to a less-qualified white person.

6

If the *Kristufek* case was a "close call," 985 F.2d at 368, that makes the present case come up short. Nothing in Moss's EEOC charge suggests that he thought he was being discriminated/retaliated against for engaging in protected activities. Count II of Moss's complaint will be dismissed.

*Counts III, IV and V – 42 U.S.C. § 1983*

As stated earlier, UND makes two arguments. First, that it is a private, not state, actor, and § 1983 applies only to actions taken under color of state law. Second, that Moss's speech was work-related and so not a constitutional activity protected by § 1983.

*a. Action Under Color of State Law*

As is relevant here, § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

42 U.S.C. § 1983. The parties are in complete agreement as to what this means: The essential elements a plaintiff must plausibly allege to state a claim pursuant to § 1983 are that a person "acting under color of state law" deprived the plaintiff of a "right secured by the Constitution or federal law." *Wilson v. Warren Cty., Illinois*, No. 15-1939, 2016 WL 3878215, at *2 (7th Cir. July 18, 2016). "[T]he under-color-of-state-law element of § 1983 excludes from its reach '"merely private conduct, no matter how discriminatory or wrongful."'" *American. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal citations omitted).

Notre Dame, as Moss admits, is privately owned. (DE # 1 at 2, ¶ 7.) He asserts, however—as he alleged in his complaint—that Notre Dame's campus is so open to the public and so similar to a traditional town, containing public roads, stores, restaurants, a post office, a police department and so forth, that it should be viewed as a municipal entity like the company town was in *Marsh v. Alabama*. In moving for dismissal, UND tackles this assertion by arguing on "Plaintiff's 'you let the public visit your campus to eat Burger King and watch football games' state action theory is not supported by the law." (DE # 12 at 8.) UND then cites, in the following sequence, cases which it believes show the lack of support for plaintiff's theory: *McFadyen v. Duke Univ.*, 786 F. Supp. 2d 887 (M.D.N.C. 2011); *Cohen v. Illinois Institute of Technology*, 581 F.2d 658, 663 (7th Cir. 1978); *London v. RBS Citizens, N.A.*, 600 F.3d 742, 748 (7th Cir. 2010); and *Alcantar v. Bridegroom*, No. 2:07CV299-PRC, 2008 WL 2097575, at *1 (N.D. Ind. May 16, 2008).

None of those cases—except *Cohen*—cites *Marsh* or discusses its "company town" theory, and so are not persuasive. Although *Cohen* mentions *Marsh*, it does so only to point out that unlike a previous case (*Illinois Migrant Council v. Campbell Soup Co.*, 519 F.2d 391 (7th Cir. 1975), which is discussed below), the complaint at issue did not plead "specific facts" intended to "establish that a 'residential community' maintained by the defendants was a 'company town' within the meaning of *Marsh*." *Cohen*, 581 F.2d at 663. Here, Moss does plead specific facts which he argues show that Notre Dame is tantamount to a company town, so *Cohen* also fails to persuade that Moss has a legally unsupported theory.

8

UND then argues that *Marsh* itself does not specifically address the issue of what constitutes "state action" for the purposes of a § 1983 claim, which is true, but then asserts that "other courts have expressly ruled that *Marsh* does not, and cannot, apply to private universities." (DE # 12 at 9.) The "cannot" portion of the assertion is not necessarily borne out by the three examples UND cites: *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971); *Browns v. Mitchell*, 409 F.2d 593, 594 (10th Cir. 1969); and *Grossner v. Trustees of Columbia University*, 287 F. Supp. 535 (S.D.N.Y. 1968).

UND cites first, and relies most heavily, on *Grossner v. Trustees of Columbia University*. In that case the plaintiffs argued that the university was performing a public function merely by educating people, and the court explained "nothing supports the thesis that university (or private elementary) 'education' as such is 'state action.'" *Grossner*, 287 F. Supp. at 549. This is a great deal different than Moss's contention that many aspects of Notre Dame's campus that make it like a typical municipality.

*Browns* serves UND's argument better. In *Browns*, university students were suspended after occupying a university building and refusing to leave. The students argued that the university was like the company town in *Marsh*, so their suspension was a state act. In disposing of that argument, the court stated that *Marsh* was "concerned only with the delineation of public places for purposes of First Amendment activities," and its holding did not mean that dismissing an employee or student could "in any sense of the word, be deemed state action."*Browns*, 409 F.2d at 596. *Blackburn* is in the

9

same vein as *Brown*, and so both cases do support UND's contention that *Marsh* says nothing about what constitutes "state action" for the purposes of § 1983.

The problem with this line of reasoning is that it runs up against the *Campbell Soup Co.*, decision in this circuit, a case in which the plaintiffs sought damages for limitations on their exercise of First Amendment rights by an alleged company town. The court reversed the district court's dismissal, stating that the plaintiffs "alleged sufficient facts upon which it could be concluded that the Campbell Soup Company's town of Prince Crossing was a company town within the meaning of *Marsh v. Alabama*, and accordingly when the defendant Company acted, *it did so under color of state law.*" *Campbell Soup Co.*, 519 F.2d at 395 (emphasis added). Thus, this court does not think it can say that *Marsh* could never be applied to UND[4] or any private university if it can be shown to be operating as a company town, and taking actions designed to deter and chill activities protected by the First Amendment.

The caveat "if it can be shown" in the preceding sentence leads to Moss's main argument against dismissal of his complaint. He maintains that his allegations that UND is a company town are plausible, and so sufficient, to withstand dismissal: It would simply be premature to dismiss his complaint without letting him attempt to prove that UND is a company town. In its reply memorandum, relying almost entirely

---

[4] Although not a fact relied on in any way in arriving at this decision, it is interesting that Notre Dame's website lists its address as "University of Notre Dame[,] Notre Dame, Indiana 46556." https://www.nd.edu/about/contact/ (last accessed September 27, 2016).

on the same cases cited in its opening memorandum in support of dismissal, UND argues that dismissal is not premature, reiterating its argument that no court has applied *Marsh* to a university and that it is impossible for *Marsh* to be used to reason that UND might be a company town/state actor.

As explained above, the court thinks that *Campbell Soup Co.* is contrary to this claim of impossibility. Moreover, because "[d]etermining the threshold of components necessary to constitute a company town under Marsh requires a detailed factual analysis," *Illinois Migrant Council v. Campbell Soup Co.*, 574 F.2d 374, 376 (7th Cir. 1978) the court agrees with Moss that dismissal would be premature. This court has previously said as much. *Torres v. Univ. of Notre Dame du Lac*, No. 3:11-CV-209, 2012 WL 12292946, at *9 (N.D. Ind. Mar. 23, 2012) ("Court expresses doubt that the facts of this case fit squarely within either *Marsh* or *Burton*, . . . and at a minimum, given the fact sensitive nature of the issue, these questions are more appropriately addressed at a later stage of the proceedings.") The court will state clearly, however, that "not impossible" falls far on the spectrum from "likely." Nothing above should be taken to mean it is likely that there will be enough facts to show that Notre Dame is a *Marsh*-type company town. It is not possible now, however, to say that Moss's allegations are so speculative and unsupported by law that they should be dismissed.[5]

---

[5] Another argument Moss makes is that "a finding that Defendant Notre Dame is a state actor also opens the door to personal liability for its officer and agent, Defendant Hoffman-Harding, such that dismissal of these counts against either Defendant is improper at this time." (DE # 14 at 10). As UND points out in its reply, this is simply contrary to logic. Keeping the individual defendant in the case is not a reason to find

11

*b. Non-protected Work-related Speech*

In paragraphs 22, 35, and 47 of his complaint, Moss alleges that his association with and speech concerning the Call to Action student group was appropriately done pursuant to his job duties. UND makes this one-sentence argument:

> Section 1983 does not protect acts performed pursuant to an employee's job responsibilities. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006) ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.")

(DE # 12 at 10.) In *Garcetti* a deputy prosecutor was disciplined for statements made in a memo he wrote pursuant to his job duties. The Court held that he could be disciplined for the memo, because he "did not speak as a citizen by writing a memo that addressed the proper disposition of a pending criminal case," instead he "acted as a government employee." *Garcetti*, 547 U.S. at 422. If, however, an "employee spoke as a citizen on a matter of public concern," then "the possibility of a First Amendment claim arises." *Id*. at 418.

Moss has come perilously close to pleading himself out of court. However, he also alleges in his complaint that his speech and conduct regarding Call to Action was "vocal and comprehensive . . . which garnered significant publicity both on and off campus," and that UND's actions deterred his right to free speech and association "both

---

that Notre Dame is a state actor. However, because the court has not yet held that Notre Dame cannot be a state actor, the individual claims against Hoffman-Harding will not be dismissed.

inside and outside of work." (DE # 1 at ¶¶ 21, 52.) Thus, his complaint includes allegations that (barely) indicate that he also spoke and acted outside of his role as a Notre Dame employee. Moss's complaint will not be dismissed on the basis that he alleges only non-protected speech and association.

*42 U.S.C. § 1981*

As mentioned *supra* at 3 n.2, the introductory paragraph of Moss's complaint and its ¶ 2 mention 42 U.S.C. § 1981. After that, the statute goes missing from the complaint, and UND did not address it in its motion to dismiss. In responding to the motion, however, Moss included an argument that a "*prima facie* case of race or ethnicity discrimination under § 1981 is predicated on the same elements as an ethnicity discrimination claim under Title VII," and because he has "sufficiently alleged his Title VII claims against Defendant Notre Dame, he has also sufficiently alleged his 42 U.S.C. § 1981 claims." (DE # 14 at 16, 17.) This caused UND to argue in its reply:

> Plaintiff's Section 1981 claims should be dismissed because he did not properly plead them. Alternatively, since Plaintiff now claims that his Section 1981 claims fall under Counts III, IV, and V, which all involve Section 1983 First Amendment claims, those claims should also be dismissed because Notre Dame is not a state actor.

As explained above, it is too early to definitively declare that Notre Dame is a state actor.

In addition, although the court agrees with UND that it is not at all clear from the complaint what role Moss intends for § 1981 to play in this litigation:

> [M]atching facts to a legal theory was an aspect of code pleading interred in 1938 with the adoption of the Rules of Civil Procedure. See *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1077-78 (7th Cir. 1992). A complaint must narrate a *claim*, which means a grievance such as "the City violated my rights by preventing me from renovating my apartments." Having specified the wrong done to him, a plaintiff may substitute one legal theory for another without altering the complaint.

*Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997). Because the court is not dismissing the claims asserted in Counts I, III, IV and V of Moss's complaint, and because legal theories are not claims, there is no reason to "dismiss" § 1981 from the complaint.

*Conclusion*

For the foregoing reasons, defendants' motion to dismiss plaintiff's complaint is **GRANTED** in part and **DENIED** in part; Count I of the Complaint is **DISMISSED** against Erin Hoffman Harding, only; Count II of the complaint is **DISMISSED**.

**SO ORDERED.**

Date: September 27, 2016

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT